Number seven, McHenry v. Berryhill. Good morning, your honors. May it please the court. Matt Richter on behalf of Plaintiff Appellant Shannon E. McHenry. The bottom line in this case, and particularly in this case, is that it should have been subjected to medical expert scrutiny. With regard to that first issue... Before we get into that, are you still claiming disability from January 1st, 2011 forward? Or have you moved that in light of what's in the record that Ms. McHenry was working at a hair salon during that time? So, your honor, a few points to be made there. When the judge adjudicated this decision at the administrative level, he did not have to find her disabled as of January 1st, 2011. He could have found her disabled as of December 13th, 2013, the date of her application. So, that sort of amending is something that would go on at the administrative level with the administrative law judge. But, also... You're saying you're not taking a position on that here? I'm not taking a position on whether she should amend. On the onset date that you're seeking relief from? Or the date you're claiming she was disabled? No, I'm not taking any position on that here. But, I will say that there is something in the record. So, the notion that she was working this entire time, I don't think is established. When you look at the record, she paid social security taxes through that alleged onset date. She did it reliably every year through 2011. It just seems strange that in 2011, she would make this sort of calculation that she was suddenly going to stop paying her taxes, work under the table, and then wait two years and apply for disability benefits. There's really no logical explanation for someone to do that. There's no benefit to her. As if she had actually been working and paid into the system, her date last insured would have been out further. And the MRI in 2014 would not even be in dispute. I mean, it would be well within the period of her coverage. But, yeah, I think because the judge could have, he didn't have to approve her as the alleged onset date. And there was no dispute whether she was working after her application. He could have just issued a partially favorable decision on December 13, 2013 if he wanted to. But I think the two most important questions the case, or the court has to consider in this case is, one, whether it's going to allow an ALJ, not a medical expert, to interpret incredibly complex medical evidence. And to determine whether an MRI taken three months after the date last insured reflected severe etiology that was or was not present just three months earlier. And that's what happened here. I mean, looking at the administrative record, 4243, the judge's decision, he makes clear that he needed to determine whether the impairments demonstrated in the April 8, 2014 MRI actually existed at the same or similar level between January 1, 2011 and the date last insured, December 31, 2013. And this court has time and time again found that that kind of interpretation of medical evidence by a judge is improper. And that kind of evidence should be subject to medical expert scrutiny. The second major question I think the court has to answer is whether it's going to accept commissioner's argument, and an appellant's view, it's quite a peculiar argument, that meeting the listings criteria and medically equaling the listings criteria are effectively the same thing. So as the regulations and the case precedent demonstrate, a medical expert could have reviewed the MRI, reviewed the record prior to the date last insured, which demonstrated a lot of severe pain, widespread tenderness, complaints of widespread pain. She was being treated with extremely strong narcotic and opioid pain medications for her pain. And the expert could come to the determination that that pain and those limitations would have been medically equal to the listing based on an MRI that showed severe spinal atheology, just three months after the date last insured. And I think it's important that we understand the reason I say that's severe is because, well, one, the ALJ acknowledged it in his decision at 42 and 43, but also Social Security acknowledges it in that the presumptive listing of disability in question, 104A, it requires compromise of just one nerve root, or compromise of the spinal cord. In Ms. McHenry's case, there are multiple nerve roots impinged in the thoracic and lumbar spine, as well as the thoracic spinal cord. So it's fourfold of what Social Security needs in order to even consider listing 104A. It's very severe spinal atheology. And every day in Social Security hearings, doctors make these calls. They review evidence that comes in shortly after a date last insured, and they interpret it, and they determine whether or what limitations a person would have just before their date last insured. And in this case, what we have is an administrative law judge making the choice not to do that, but instead to interpret this MRI and to decide that the plaintiff appellant, her severe spinal atheology just developed over the course of three months. We know that's not how degenerative disc disease works. That is something that doesn't necessarily take a medical expert to determine. A simple Google search can establish that. These sorts of severe degenerative spinal issues don't just develop over the course of three months. And with that, I just request that the court remand the case and ask that a medical expert review the MRI. Thank you. Thank you, Counsel. Ms. Gibbons? Good morning, Your Honors, and may it please the court. My name is Catherine Gibbons, and I'm here on behalf of Defendant Appellee Acting Commissioner Berryhill. Your Honors, in this case, what we have is a 42-page ALJ decision which provides extraordinary detail for the substantial evidence that supported the ALJ's decision at each step of the five-step sequential evaluation. In that discussion of the evidence, which the ALJ considered the evidence from before the relevant time period, during, and after, again, in considerable detail, the evidence tends to show two major themes from the relevant time period that significantly undercut Ms. McKendry's arguments on appeal. First, we have the 17 visits with the two nurse practitioners. And those 17 visits showed clinical findings and exam results that affirmatively demonstrated she did not meet the other criteria, or meet the criteria for presumptive disability. We have two negative straight leg raise testing. We have consistent reports of she moved easily. She had full range of motion. She had good strength. There was full reflexes. So all of these points and the clinical observations that she was in no acute distress and she was doing well. What about the last nurse practitioner treatment record that seems to show a decline and is different from the other ones, including she was having a hard time getting up and had told them the week before when she'd been on vacation. She had to stay in bed part of the time. That seems different than the prior 16. Yes, the November, the last appointment with Ms. Owens, she did, I think, like you said, those were the two sort of most significant findings from that appointment. However, it also said that she was doing relatively well. She had just returned from a three-week trip to Alaska where she, quote, enjoyed the last two weeks of the vacation. And actually, if you look at the next record, which is just outside of the relevant time period, in February 2014, during her first visit with Dr. Eipel, she again is reporting that really the only thing that's bothering her was some right elbow pain. She is, again, doing relatively well. And she affirmatively tells her doctor that she is doing well on her medications with no adverse side effects. And crucially, there is a negative straight leg raise during that February 2014 visit. And at this time, I think even into, I think it was her May 2014 visit with Dr. Eipel, she's still reporting that she's at least trying to do work as a hairdresser. So we have those clinical findings from the 17 visits. I think you would agree that the MRI results were inconsistent with the treatment notes. Your Honor, respectfully, no, because... Okay, so then let me ask you a different question if you don't agree with that. With Dr. Eipel's treatment notes? Dr. Eipel's treatment effort, the MRI from 2014, outside of the period. Right. So why, under this court's precedent, including a recent case in Aiken, why was it appropriate for the ALJ to make the medical determination that the MRI was not inconsistent with the treatment notes? For two reasons. First, crucially, we did have the state agency reviewer at the reconsideration level. It does appear that he considered the MRI findings. It was listed in the list of evidence he considered. It wasn't discussed in the narrative. But his reconsideration determination was done in July of 2014, and there was records from Dr. Eipel, and the MRI would have been in the record as well at that point. So it appears that he considered it. So we have an expert who did consider it and said, she doesn't even have severe impairments, let alone none of her impairments meet her equal listing. So that's one point. The second point, with regard to what the ALJ did, is this is not a case, I believe in Aiken, which you referenced, we had a claimant who was again and again reporting throughout the time period severe pain that interfered with her daily activities. We had emergency room visits. We had many, many, many treatment records that sort of supported her allegations. Here, we have the opposite. We have Ms. McHenry's contemporaneous report saying, I'm doing well. I'm going bike riding. I am continuing to work full time. She says that at least through February of 2013. She's taking care of her elderly mother. She's engaging in a robust level of activity. So the ALJ is not looking at a vacuum. We have affirmative reports here that show she did not have the symptoms that would be consistent with a presumptive disability. And the ALJ wasn't interpreting the MRI. He was looking at what the radiologist said about the MRI and comparing it as he should have with the evidence from the relevant time period. And each individual- But can he make that determination on a medical basis, which is what he was doing? Can he make the determination that the impairments, he can look at the record and she herself was denying that she had those functional limitations and severe symptoms. So again, it's not a vacuum. She is affirmatively telling her treaters, I'm doing great. She's not reporting back pain. She has a negative straight leg raise. She has full range of motion. These are all things that are precisely counter to what you would need to show for listing 1.04A. And the ALJ is not- Each individual, it's sort of under the line of cases of- The diagnosis alone does not establish the level of severity of an impairment. One person's disc bulge is different than another person's disc bulge. But this is different than a diagnosis. This is the objective evidence of the MRI. True, but that still didn't manifest with the necessary symptoms that she would have needed to show to meet or equal listing 1.4A. Well, the bottom line is no medical expert reviewed the consequential MRI report, right? Yes, Dr. Sands at the reconsideration level. On the reconsideration level? It was under the list of evidence that he considered. He didn't address it in the narrative, but it was also outside the time period, the relevant time period. So I don't know that it would be a surprise- Well, at step three, when she evaluated it, had he done that? He looked at step three and he said she does not meet or equal a listing. And at that point, you can look at the list of evidence for the reconsideration decision. And it lists... I mean, there's pages and pages of evidence. It's actually at... I just pulled it up right here. Is it required that he specifically... I'm sorry. Yeah, that's okay. Is it required that he specifically address it, though, or that it's clear to the reviewer that the state agency reviewer did consider this? No, I don't believe that he had to discuss it in his narrative findings. And I'm sorry, that was an inartful question. Is it okay that he didn't discuss it in his findings? In other words, can we assume that he considered it if he didn't discuss it? I believe based on the list of evidence that he put in his report that he considered, yes, it appears he considered the MRI. And even if he didn't,  what we have here is an MRI. And even if you had the MRI in, say, October of 2013, this would not make a difference in this case because all you would have is imaging that showed nerve root impingement. What you don't have are the other five criteria necessary for listing 1.04a. You don't have neuroanatomic distribution with pain. You don't have a positive straight leg raise. You don't have motor loss or muscle weakness. You don't have sensory loss or reflex loss. Did Dr. Immel's opinion give those other factors, though? Eventually, I believe he weighed in on some of the other facts. I think two months later. No, much later than that. I think it wasn't until December. There may have been range of motion testing from June of 2014. I think that's it. Yes, but that's six months after the date last insured. And again, this counter that actually undercuts or is at odds with what we have affirmatively in the record from the relevant period, which was she had full range of motion. And I think this is, again, a case where sending it back. Ms. McHenry has not even attempted to demonstrate that she meets any of the other criteria for listing 1.04a. And we're talking about the 2014 MRI? Yes, but her reports during the time is that, again, she continued to work full time. She had very robust activity level. And it was her burden. That's another point I would like to underscore. She has a special burden of showing why she met her equal to listing. With regard to the other two points very briefly, her mental RFC, the ALJ found that she had only a mild impairment in social functioning and maintaining concentration, persistence, and pace, which means it's just a slight impairment. Again, her allegations on appeal are at odds with her affirmative contemporaneous statements to her treaters. And with regard to her work activity, the ALJ outlined numerous instances in his 42-page decision of inconsistencies in her statements. Unless there are further questions,  Thank you, counsel. Just a few points in rebuttal. First, I do want to reemphasize that meeting a listing and medically equaling a listing are not the same thing. So a doctor could, in fact, interpret that severe 2014 MRI and say, yes, this person would experience severe enough symptoms to be presumptively disabled. Second, I want to address the notion that Ms. McHenry was telling her doctor she was fine. She may have been relatively fine, but she was experiencing severe enough pain that her doctors were prescribing her what's effectively morphine, methadone, to deal with her severe back pain. And so I think the idea that she was doing fine isn't supported by the record. I did want to say one thing about the reconsideration stage. There's no evidence that the doctor there ever looked at this MRI. He didn't mention it. There's a portion of the reconsideration exam which asks him to explain the basis for his affirmance of the previous doctor's findings, and he doesn't mention this incredibly severe MRI. So I think it's safe to say that that doctor didn't consider the 2014 MRI. Thank you. Thank you, counsel. Thanks to both counsel and the cases taken under advisement. We move to the case.